IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Kacy K. Benefield, | ) | No. CV-11-438-PHX-ROS (LOA) |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Charles L. Ryan, et. al, | ) | |
| Respondents. | ) | |

Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, doc. 1, challenging his convictions in Arizona Superior Court, Maricopa County. (Doc. 1)  Respondents filed an Answer, asserting that the Petition was untimely. After an initial review of the record, including Petitioner's reply, the Court believed the Petition might be timely, and thus, directed Respondents to file a Supplemental Answer, addressing the merits of the claims asserted in his Petition for Writ of Habeas Corpus. Respondents filed a timely motion for reconsideration of that order. Because the Court was inclined to grant the motion for reconsideration, briefing was authorized.

After Petitioner filed a response to the motion for reconsideration, the Court denied Respondents' motion for reconsideration and ordered further briefing, including a discussion of how the Supreme Court's recent decision in *Martinez v. Ryan*, ___ U.S. ___, 2012 WL 912950 (March 20, 2012), may impact this case. (Doc. 26)  Respondents filed a Supplement Response, doc. 27, to which Petitioner has replied, doc. 29.  For the reasons set forth below, the Petition should be denied.

**I. Background**

**A. Indictment, Trial, and Sentencing**

Based on events that took place in July of 2004, Petitioner was indicted in the Superior Court of Arizona, Maricopa County, on the following charges: Count 1 - Burglary in the First Degree, a class 2 dangerous felony; Count 2 - Aggravated Assault, a class 3 dangerous felony; Count 3 - Endangerment - a class 6 dangerous felony; and Count 4 - Assault, a class 1 misdemeanor. (Respondents' Exh. A[1])  On January 19, 2005, Petitioner's case proceeded to trial.[2] (Respondents' Exhs. B-G)  On January 27, 2005, a jury convicted Petitioner of the following crimes: Count 1 - Burglary in the First Degree, a dangerous offense; Count 2 - the lesser included offense of Disorderly Conduct, a dangerous offense; Count 3 - Endangerment, a dangerous offense; and Count 4 - Assault. (Respondents' Exhs. G, H)

On April 29, 2005, the court imposed the following sentences: the presumptive term of 15.75 years' imprisonment on Count 1, Burglary; and the presumptive term of 3.75 years' imprisonment on Counts 2 and 3, Disorderly Conduct and Endangerment. The court ordered that the sentences on Counts 1-3 run concurrently. (Respondents' Exh. I)  On Count 4, the court sentenced Petitioner to a six-month term of incarceration. (Respondents' Exh. J)

**B. Direct Appeal**

On May 12, 2005, Petitioner filed a timely notice of direct appeal. (Respondents' Exh. K)  Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1969), advising the court that she could find no colorable claim to raise on appeal, re-

---

[1]   Unless otherwise indicated, citations to "Respondents' Exh." are to the following exhibits attached to Respondents initial Response to Petition for Writ of Habeas Corpus, doc. 16: Exhibits A-M, doc. 16-1; and Exhs. N-W, doc. 16-2. Although the Court directed Respondents to file a Supplemental Answer, the Court did not require Respondents to resubmit their exhibits.  (Doc. 22)

[2]  The Honorable Crane McClennen presided.

questing the court allow Petitioner to file a *pro se* brief. (Respondents' Exh. L)  Petitioner

subsequently filed a *pro se* supplemental brief, asserting the following claims: (1) his right

to a speedy trial was violated; (2) the trial court erred in denying Petitioner's motion for a

directed verdict pursuant to Ariz.R.Crim.P. 20; (3) the trial court erred in failing to give a

*Willits* instruction; (4) the trial court gave "expert testimony" regarding gun residue; (5) the

prosecutor engaged in misconduct; and (6) his trial counsel was ineffective. (Respondents'

Exh. M, doc. 16-2 at 57)  On April 27, 2006, the appellate court affirmed Petitioner's

convictions and sentences. (Respondents' Exh. M)   The court stated that:

> In July 2004, [Petitioner] brought property to Carrie Curtis's apartment for
> temporary storage, claiming that the property was his and he was moving.
> The next day, police confiscated the items as possible stolen property.
> [Petitioner] subsequently returned to the apartment with a friend to retrieve
> the property.  Upon entering the apartment, [Petitioner] confronted Ronnie
> Cresson, Curtis's younger brother, about the missing items and struck Cresson
> on the face with his hand. [Petitioner] then pulled a gun from his pocket, waved
> it around, and fired a shot toward the kitchen, all the while demanding to know
> the whereabouts of the items.  Thereafter, [Petitioner] left the apartment and
> threatened to come back to harm Curtis and her family if he did not obtain
> possession of the items.
>
> Cresson and Curtis later positively identified [Petitioner] to Phoenix Police
> Officer Angel Cordova, who then arrested [Petitioner] at a nearby apartment
> complex.

(Respondents' Exh. N, doc. 16-2 at 3-4)

The appellate court rejected Petitioner's claims and concluded that there was no

reversible error. (Respondents' Exh. N)  Petitioner sought review of the appellate court's

decision in the Arizona Supreme Court. On December 12, 2006, the Arizona Supreme Court

denied review. (Respondents' Exh. O, doc. 16-2 at 21)  Petitioner did not seek a *writ of

certiorari* from the United States to Supreme Court.

**C.  Post-Conviction Review**

On February 20, 2007, Petitioner, proceeding *pro se*, filed a notice of post-

conviction relief in the trial court pursuant to Ariz.R.Crim.P. 32. (Respondents' Exh. P, doc.

16-2 at 24)  After several extensions, on May 28, 2008, Petitioner filed a petition for post-

conviction relief pursuant to Ariz.R.Crim.P. 32. (Respondents' Exh. Q, doc. 16-2 at 29)

1   Petitioner raised the following claims: (1) the trial court gave the jury an incorrect instruc-

2   tion on endangerment; (2) the incorrect endangerment instruction undermined the reliability

3   of the burglary conviction because it created a substantial probability of a non-unanimous

4   verdict; and (3) his trial and appellate counsel were ineffective. (*Id*.)  On October 22, 2008,

5   the court denied the petition. (Respondents' Exh. T, doc. 16-2 at 72)

6           On November 21, 2008, Petitioner filed a petition for review in the Arizona Court

7   of Appeals. (Respondents' Exh. U, doc. 16-2 at 78)  On January 25, 2010, the appellate

8   court denied review. (Respondents' Exh. V, doc. 16-2 at 81)  Petitioner did not seek further

9   review in the Arizona Supreme Court.

10  **D.  Federal Petition for Writ of Habeas Corpus**

11          On March 7, 2011, Petitioner filed the pending Petition for Writ of Habeas Corpus

12  in this Court raising the following eight grounds for relief:

13          Ground One: Denial of Sixth Amendment right to a speedy trial.

14          Ground Two: Insufficient evidence to support Petitioner's convictions and
            sentences in violation of the Due Process Clause.

15

16          Ground Three: Failure to give an instruction pursuant to *State v. Willits*, 96 Ariz.
            184, 393 P.2d 274 (Ariz. 1964) in violation of the Arizona and U.S. Constitutions.

17          Ground Four: The trial court's responses to two jury questions were erroneous
            and denied Petitioner a fair trial in violation of the due process clause of the
18          Arizona and U.S. Constitutions.

19          Ground Five: The prosecution engaged in misconduct in violation of the right
            to due process under the Fourteenth Amendment.
20
            Ground Six: The trial court's jury instruction on endangerment was insufficient
21          and denied Petitioner his right to a fair trial under the Arizona and U.S.
            Constitutions.
22
            Ground Seven: The trial court's erroneous endangerment instruction undermined
23          the reliability of the burglary verdict by creating a substantial probability of an
            non-unanimous verdict.
24
            Ground Eight: Ineffective assistance of counsel in violation of the Arizona and
25          U.S. Constitution.

26  (Doc. 1 at 6-13)

27          Respondents assert that the Petition should be dismissed as untimely. Petitioner

28                                              - 4 -

opposes that assertion. (Doc. 21) Although the Court directed Respondents to file supplemental briefing addressing the merits of Petitioner's claims, contrary to Petitioner's suggestion, that requirement did not reflect the Court's final decision on whether the Petition was timely filed. In the alternative, Respondents contend that, although Petitioner properly presented Grounds One and Eight to the State courts and those claims are properly before this Court on habeas corpus review, those claim lack merit. (Doc. 27 at 18)  Respondents also assert that Grounds Two, Three, Four, Five, Six, and Seven are procedurally defaulted and barred from federal habeas corpus review. (Doc. 27)  The Court will first consider whether the Petition was filed timely.

## II. Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") established a one-year period in which to file a petition for writ of habeas corpus in federal court. 28 U.S.C. § 2244(d)(1).

Title 28 U.S.C. § 2244 provides, in pertinent part, that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d).

To assess the timeliness of the Petition for Writ of Habeas Corpus, the Court must first determine the date on which Petitioner's conviction became "final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A). Petitioner timely appealed his convictions and sentences to the Arizona Court of Appeals. Petitioner sought review in the Arizona Supreme Court which was denied on December 12, 2006. (Respondents' Exh. O, doc. 16-2)  Petitioner had 90 days from December 12, 2006 in which to seek a *writ of certiorari* in the United States Supreme Court. Petitioner did not seek such relief. However, before the end of

1  that 90-day period, on February 20, 2007, Petitioner filed a notice of post-conviction relief
2  in the State court. (Respondents' Exh. P, doc. 16-2)

3         Pursuant to the AEDPA, the one-year limitations period is tolled during the time
4  that a "properly filed application for State post-conviction or other collateral review with
5  respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2) (the
6  AEDPA's limitations period is tolled during the time that a "properly filed application for
7  State post-conviction or other collateral review with respect to the pertinent judgment or
8  claim is pending."). Thus, the filing of the notice of post-conviction relief on February 20,
9  2007 effectively stopped the AEPDA limitations period. The trial court denied the petition
10 for post-conviction relief on October 22, 2008. (Respondents' Exh. T, doc. 16-2)  Petitioner
11 timely appealed. (Respondents' Exh. U, doc. 16-2)  On January 25, 2010, the appellate court
12 denied review. (Respondents' Exh. V, doc. 16-2)  Petitioner did not seek further review and
13 the thirty-day period to seek review pursuant to Ariz. R.Crim.P. 32.9(g) expired on February
14 24, 2010. *Hemmerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007). Thus, the AEDPA
15 limitations period commenced on February 24, 2010 and expired one year later, on February
16 24, 2011.  Because the Petition for Writ of Habeas Corpus was filed on March 7, 2011, it is
17 untimely and not properly before this Court unless equitable tolling applies. 28 U.S.C. §
18 2244(d).

19 **A. Equitable Tolling**

20        Section 2244(d)'s limitations period may be equitably tolled because it is a statute
21 of limitations, not a jurisdictional bar. *Holland v. Florida*, ___ U.S.___, 130 S.Ct. 2549,
22 2560 (2010); *Waldron-Ramsey v. Pacholke,* 556 F.3d 1008, 1011 n. 2 (9th Cir. 2009). A
23 petitioner is entitled to equitable tolling only if he establishes two elements: "(1) that he has
24 been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his
25 way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The onus is on a petitioner who
26 seeks the benefit of equitable tolling to establish both elements. *Holland*, 130 S.Ct. at 2562.
27 "The diligence required for equitable tolling purposes is  reasonable diligence, not maximum

28

1    feasible diligence." *Id.*, 130 S.Ct. at 2565 (internal citations and quotations omitted).  The

2    Ninth Circuit has noted that "the cases in which equitable tolling has been applied have

3    involved *wrongful* conduct, either by state officials, or occasionally, by the petitioner's

4    counsel." *Shannon v. Newland*, 410 F.3d 1083, 1090 (9th Cir. 2005) (citing *Stillman v.*

5    *LaMarque*, 319 F.3d 1199, 1020 (9th Cir. 2003)) (emphasis in original). Whether to apply

6    the doctrine of equitable tolling "is highly fact-dependent,' and [the petitioner] 'bears the

7    burden of showing that equitable tolling is appropriate." *Espinoza-Matthews v. California*,

8    432 F.3d 1021,1026 (9th Cir. 2005) (internal citations omitted).

9            The circumstances in this case do support a finding that Petitioner pursued his

10   rights diligently or that an extraordinary circumstance prevented him from filing a timely §

11   2254 petition. Petitioner argues that the Arizona Court of Appeals denied review of the trial

12   court's ruling on post-conviction relief on March 11, 2010. (Doc. 21)  Petitioner explains,

13   "[t]here is a problem of when I was notified of my direct appeal. My post-conviction tolled

14   the time for my direct appeal. Post conviction decision March 11, 2010 (attached as "A")."

15   (Doc. 1 at 15)  Petitioner's attachment "A" refers to the entry on the docket sheet in his

16   proceeding before the Arizona Court of Appeals which indicates that on March 11, 2010 a

17   letter, containing a certified copy of the order denying review was mailed to the Clerk of the

18   Superior Court and to Carol Ann Sonier, with the Department of Public Safety.  (Doc. 21,

19   Exh. 2)  However, the record further reflects that the Arizona Court of Appeals denied

20   review on January 25, 2010.  (Doc. 1-1 at 1; doc. 16-2, Exh. V; doc. 21 at 23)  As the docket

21   sheet pertaining to Petitioner's Criminal Petition for Post Conviction Relief indicates, March

22   11, 2010 was the date the case was closed. (Doc. 21 at 23)  The State docket plainly states

23   that the appellate court denied review on January 25, 2010. (Doc. 21 at 23)

24           Respondents argue that the date of the conclusion of Petitioner's direct appeal does

25   not have any effect on the issue of equitably tolling the AEDPA's statute of limitations from

26   the date his post-conviction proceedings were final. Doc. 27 at 8) The Court agrees with this

27   statement. Although the Petition states that "there was a problem of when [Petitioner] was

28                                          - 7 -

notified of [his] direct appeal," doc. 1 at 15, Petitioner's arguments clearly pertain to the appeal of the Superior Court's denial of his petition for post-conviction relief. (Docs. 1-1 at 1; 25, attachment - affidavit of Brent E. Graham, who "filed a petition for review with the Arizona Court of Appeals when Benefield's petition for post-conviction relief was denied by the Superior Court.").

Petitioner further argues that he was unfamiliar with the deadline for filing his § 2254 petition. After the State raised the issue of timeliness in its initial response, on September 9, 2011, Petitioner wrote a letter to his post-conviction counsel, inquiring about the deadline for filing a § 2254 petition. (Doc. 21, Exh. 1)  Attorney Brent Graham advised Petitioner that he does not practice in federal court and is not familiar with the "time frames" about which Petitioner inquired. (*Id.*)  Petitioner argues that, because his post-conviction counsel was not aware of the AEDPA statute, "where was petitioner to get the correct date?" (Docs. 21 at 1; 25)  Petitioner further argues that neither he nor his attorney was aware of the date on which the Court of Appeals denied the petition for review. In his January 3, 2012 affidavit, Graham avers that he never received notice from the Court of Appeals that the petition for review had been denied or had otherwise concluded. (Doc. 25, attachment) While an attorney's behavior can establish the extraordinary circumstances required for equitable tolling, mere negligence or professional malpractice is insufficient. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001). A "garden variety claim of excusable neglect, 'such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline does not warrant equitable tolling.'" *Holland*, 560 U.S. at ___ (slip opinion at 19). Rather, counsel's misconduct must rise to the level of extraordinary circumstances. *Id*. An un-adorned failure to advise about a limitations period is, at best, simple negligence.

Petitioner also contends that he never received a final ruling from the Arizona Court of Appeals, and thus, could not have known when to file his federal habeas corpus petition. The record reflects that, on October 9, 2009, post-conviction counsel sent Petitioner a letter, advising him that his petition for review to the Arizona Supreme Court was still

pending. (Doc. 21, Exh. 1)  Although counsel apparently misspoke when referring to the

Arizona Supreme Court, rather than the Arizona Court of Appeals, the record reflects that

Petitioner waited nearly two years before inquiring again about the status of his post-

conviction proceeding. Indeed, Petitioner did not inquire again about his state-court proceed-

ings until September 2011, after the Government had responded to his Petition for Writ of

Habeas Corpus, arguing that it was untimely. (Doc. 21, Exh. 1)  Petitioner does not explain

why, after receiving a letter from post-conviction counsel in 2009 that his state proceedings

were still pending, he waited over two years to inquire further about that proceeding. In

other words, there is no evidence that Petitioner acted diligently to obtain notice regarding

his State-court proceeding. *Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003) (noting that

"[s]uch a result would be inconsistent with our previous decisions applying equitable tolling

only where 'external forces, rather than a petitioner's lack of diligence account for the

failure to file a timely claim."); *Woodward  v. Williams*, 263 F.3d at 1135, 1142-43 (10th

Cir. 2001) ("AEDPA's statute of limitations is subject to equitable tolling only 'when an

inmate diligently pursues his claims and demonstrates that the failure to timely file was

caused by extraordinary circumstances beyond his control.") (citations omitted). "In parti-

cular, a prisoner's lack of knowledge that the state courts have reached a final resolution of

his case can provide grounds for equitable tolling if the prisoner has acted diligently in the

matter." *Id.* at 1143 (citation omitted). Additionally, because Petitioner apparently filed the

pending § 2254 petition without knowledge of when his State post-conviction proceedings

had ended, he does not explain why that lack of information caused the untimeliness of his

filing. *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (citations omitted). In short, Peti-

tioner has not carried his burden of establishing that an extra-ordinary circumstance

prevented him from filing a timely petition for writ of habeas corpus, or that he acted

diligently. *Pace*, 544 U.S. at 418.

        Additionally, Petitioner's lack of familiarity with the law and lack of legal assis-

tance do not constitute extraordinary circumstances sufficient to toll the limitations period.

"[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999); *Summers v. Patrick*, 535 F.Supp.2d 995, 999 (C.D.Cal. 2008) (citations omitted). Petitioner's ignorance of the law and indigent status do not distinguish him from the great majority of inmates pursuing habeas corpus relief. Such circumstances are not extraordinary and do not justify tolling the limitations period. "If limited resources, lack of legal knowledge, and the difficulties of prison life were an excuse for not complying with the limitation period, the AEDPA's limitation period would be meaningless since virtually all incarcerated prisoners have these same problems in common." *Bolanos v. Kirkland*, 2008 WL 928252, * 4 (E.D.Cal. April 4, 2008), *report and recommendation adopted by*, *Bolanos v. Kirkland*, 2008 WL 1988878 (E.D.Cal. May 5, 2008); *see also Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (affirming denial of equitable tolling because neither the district court's failure to advise the petitioner of the right to amend his petition to include unexhausted claims nor petitioner's inability to correctly calculate the limitations period were extraordinary circumstances warranting equitable tolling); *Marsh*, 223 F.3d at 1220 (holding that delays caused by prison inmate law clerk and law library closures do not justify equitable tolling).

Petitioner has failed to present any circumstance that justifies equitably tolling of the AEDPA's statute of limitations. Accordingly, his § 2254 Petition should be denied as untimely and the Court need not reach Respondents' alternative argument that Petitioner's claims are procedurally defaulted or lack merit. In an abundance of caution and in view of the procedural history of this case, however, the undersigned Magistrate Judge will address those issues.

### III.  Exhaustion and Procedural Bar

Respondents argue that several of Petitioner's claims are procedurally barred from federal habeas corpus review because they were not fairly presented as federal claims to the State court, and the State court denied those claims on an adequate and independent state-

1  law ground.  (Doc. 14 at 14)  The Court will consider the procedural bar issue below.

2  **A. Applicable Law**

3       Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless

4  the petitioner has exhausted the state remedies available to him. 28 U.S.C. § 2254(b). When

5  seeking habeas relief, the petitioner bears the burden of showing that he has properly

6  exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981) (*per*

7  *curiam*). The exhaustion inquiry focuses on the availability of state remedies at the time the

8  petition for writ of habeas corpus is filed in federal court. *O'Sullivan v. Boerckel*, 526 U.S.

9  838 (1999).  The prisoner "shall not be deemed to have exhausted . . . if he has the right

10  under the law of the State to raise, by any available procedure, the question presented." 28

11  U.S.C. § 2254(c). In other words, proper exhaustion requires the prisoner to "give the state

12  courts one full opportunity to resolve any constitutional issues by invoking one complete

13  round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

14  "One complete round" includes filing a "petition[] for discretionary review when that review

15  is part of the ordinary appellate review procedure in the State."  *Id.*

16       To exhaust state remedies, a petitioner must afford the state courts the opportunity

17  to rule upon the merits of his federal claims by "fairly presenting" them to the state's "high-

18  est" court in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349

19  (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with

20  the necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate

21  state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona,

22  unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if

23  the petitioner has presented his federal claim to the Arizona Court of Appeals either on

24  direct appeal or in a petition for post-conviction relief. *Crowell v. Knowles ,* 483 F.Supp.2d

25  925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

26       In addition to presenting his claims to the proper court, a state prisoner must fairly

27  present his claims to that court to satisfy the exhaustion requirement. A claim is "fairly

28

presented" in state court only if a petitioner has described both the operative facts and the federal legal theory on which his claim is based. *Reese*, 541 U.S. at 28. It is not enough that all of the facts necessary to support the federal claim were before the state court or that a "somewhat similar" state law claim was raised. *Id.* (stating that a reference to ineffective assistance of counsel does not alert the court to federal nature of the claim). Rather, the habeas petitioner must cite in state court to the specific constitu-tional guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Likewise, a mere reference to the "Constitution of the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same consider-ations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*, 232 F.3d at 668.  A state prisoner does not fairly present a claim to the state court if the court must read beyond the pleadings filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27.

In sum, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

A habeas petitioner's claims may be precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised

1   in state court, but found by that court to be defaulted on state procedural grounds such as

2   waiver or preclusion. *Beard v. Kindler*, ___ U.S.___, 130 S.Ct. 612, 614-19 (2009); *Ylst v.*

3   *Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 729-30. Thus, a petitioner

4   may be barred from raising federal claims that he did not preserve in state court by making a

5   contemporaneous objection at trial, on direct appeal, or when seeking post-conviction relief.

6   *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995) (stating that failure to raise contempor-

7   aneous objection to alleged violation of federal rights during state trial constitutes a proce-

8   dural default of that issue); *Thomas v. Lewis*, 945 F.2d 1119, 1121 (9th Cir. 1991) (finding

9   claim procedurally defaulted where the Arizona Court of Appeals held that habeas petitioner

10  had waived claims by failing to raise them on direct appeal or in first petition for post-

11  conviction relief.)  If the state court also addressed the merits of the underlying federal

12  claim, the "alternative" ruling does not vitiate the independent state procedural bar. *Harris v.*

13  *Reed*, 489 U.S. 255, 264 n.10 (1989); *Carringer v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992)

14  (state supreme court found ineffective assistance of counsel claims "barred under state law,"

15  but also discussed and rejected the claims on the merits, *en banc* court held that the "on-the-

16  merits" discussion was an "alternative ruling" and the claims were procedurally defaulted

17  and barred from federal review). A higher court's subsequent summary denial of review

18  affirms the lower court's application of a procedural bar. *Nunnemaker*, 501 U.S. at 803.

19  However, "in order to constitute adequate and independent grounds sufficient to support a

20  finding of procedural default, a state rule must be clear, consistently applied, and well-

21  established at the time of Petitioner's default." *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir.

22  1994). The Supreme Court had held that "a discretionary state procedural rule can serve as

23  an adequate ground to bar federal habeas review," and that "a discretionary rule can be

24  'firmly established' and 'regularly followed' - even if the appropriate exercise of discretion

25  may permit consideration of a federal claim in some cases but not in others." *Kindler*, 130

26  S.Ct. at 618. Likewise, occasionally excusing non-compliance with a procedural rule does

27  not render a state procedural bar inadequate. *Dugger v. Adams*, 489 U.S. 401, 410-12 n. 6

28

1  (1989).

2         Arizona courts have been consistent in their application of procedural default

3  rules. *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (holding that Ariz.R.Crim.P. 32.2(a) is an

4  adequate and independent procedural bar); *Cook v. Schriro*, 538 F.3d 1000, 1026 (9th Cir.

5  2008) (stating that "[p]reclusion of issues for failure to present them at an earlier proceeding

6  under Arizona Rule of Criminal Procedure 32.2(a)(3) 'are independent of federal law

7  because they do not depend upon a federal constitutional ruling on the merits.'") (footnote

8  omitted) (quoting *Smith*, 536 U.S. at 860); *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir.

9  1998) (rejecting argument that Arizona courts have not "strictly or regularly" followed Rule

10  32).

11         The second procedural default scenario arises when a petitioner failed to present

12  his federal claims to the state court, but returning to state court would be "futile" because the

13  state courts' procedural rules, such as waiver or preclusion, would bar consideration of the

14  previously unraised claims. *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*,

15  303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035,

16  1048-53 (Ariz. 1996); Ariz.R.Crim.P. 32.2(a) & (b); 32.1(a)(3) (post-conviction review is

17  precluded for claims waived at trial, on appeal, or in any previous collateral proceeding);

18  32.4(a); 32.9 (stating that petition for review must be filed within thirty days of trial court's

19  decision). A state post-conviction action is futile where it is time-barred. *Beaty*, 303 F.3d at

20  987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness

21  under Ariz.R.Crim.P. 32.4(a) as a basis for dismissal of an Arizona petition for post-

22  conviction relief, distinct from preclusion under Rule 32.2(a)). This type of procedural

23  default is known as "technical" exhaustion because although the claim was not actually

24  exhausted in state court, the petitioner no longer has an available state remedy. *Coleman*,

25  501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court

26  meets the technical requirements for exhaustion; there are no remedies any longer 'avail-

27  able' to him.").

28                                      - 14 -

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Hughes,* 800 F.2d at 907-08. To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Id.* The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.* Ordinarily, the ineffective assistance of counsel in collateral proceedings does not constitute cause because "the right to counsel does not extend to state collateral pro-ceedings or federal habeas proceedings." *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).

"Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish cause, the court need not reach the prejudice prong.

A federal court may also review the merits of a procedurally defaulted claim if the petitioner demonstrates that the failure to consider the merits of his claim will result in a "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A "funda-mental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* To satisfy the fundamental-mis-carriage-of-justice standard, a petitioner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Id.* at 327; 28 U.S.C. § 2254(c)(2)(B). Even if a petitioner asserts a claim of actual innocence to excuse his procedural default of a federal claim, federal habeas relief may not

- 15 -

be granted absent a finding of an independent constitutional violation occurring in the state

criminal proceedings. *Dretke*, 541 U.S. at 393-94.

**B.  Martinez v. Ryan, ___ U.S. ___, 132 S.Ct. 1309 (2012)**

In its recent decision in *Martinez*, the Supreme Court adopted a narrow exception

to the rule that prisoners have no right to counsel in state collateral review proceedings.

Here, the Court held that

> when a State requires a prisoner to raise an ineffective-assistance-of-counsel
> claim in a collateral proceeding, a prisoner may establish cause for a default
> of an ineffective-assistance claim in two circumstances. The first is where the
> state courts did not appoint counsel in the initial-review collateral proceeding
> for a claim of ineffective assistance at trial. The second is where appointed
> counsel in the initial-review collateral proceeding, where the claim should
> have been raised, was ineffective under the standards of *Strickland v.
> Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984).

*Martinez*, 132 S.Ct. at 1318. The Court explained that the ineffectiveness-of-trial counsel

must be "substantial." *Id.* As Respondents argue, *Martinez* does not apply in this case

because Petitioner does not assert the ineffective assistance of post-conviction counsel to

overcome a procedural bar to a claim of ineffective assistance of trial counsel. Ground Eight

is the only ground in which Petitioner alleges ineffective assistance of counsel, and Respon-

dents agree that Petitioner properly exhausted his State remedies on that claim. (Doc. at 27

at 26)

**C.  Procedural Default Analysis**

**1. Ground Two - Sufficiency of the Evidence**

In Ground Two, Petitioner argues that his rights to a fair trial and due process

under the U.S. and Arizona Constitutions were violated because there was insufficient

evidence to support the jury's verdicts. (Doc. 1 at 7) Initially, to the extent Petitioner raises a

state-law claim, the Arizona Constitution affords Petitioner no relief in this federal habeas

corpus proceeding. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus

relief does not lie for errors of state law[.]") (citations omitted). Thus, the Court will not

consider Petitioner's state-law claim.

- 16 -

Respondents assert that Petitioner's federal claims are procedurally defaulted and barred from habeas corpus review. Petitioner raised a sufficiency of the evidence claim on direct appeal. (Respondents' Exh. M, doc. 16-1 at 73-75)  Petitioner, however, based this claim on Arizona law. (*Id.*)  Petitioner's passing reference to "his federal rights," was not sufficient to fairly present a federal claim to the State courts. General appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish a fair presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Likewise, a mere reference to the "Constitution of the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

Because Petitioner did not fairly present his federal claims asserted in Ground Two to the State courts, those claims are technically exhausted and procedurally defaulted because he cannot now return to state court to present those claims. *See* Ariz.R.Crim.P. 32.2, 32.4(a), 32.9(c) and 31.19(a). Because the federal claims asserted in Ground Two are procedurally defaulted, federal habeas corpus review is only available if Petitioner establishes cause and prejudice or a fundamental miscarriage of justice, which the Court addresses in Section III.D below.

**2. Ground Three - *Willits* Instruction**

In Ground Three, Petitioner argues that the trial court's failure to give a *Willits*[3] instruction violated his rights to due process under the U.S. and Arizona Constitutions.

---

[3] *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (Ariz. 1964) (stating that the trial court may give an instruction allowing the jury to draw an inference from the destruction of material evidence when the lost or destroyed evidence would be unfavorable to the party that lost or destroyed it).

1   (Doc. 1 at 8)  Initially, to the extent Petitioner raises a state-law claim, the Arizona Consti-

2   tution affords Petitioner no relief in this federal habeas corpus proceeding. *Lewis*, 497 U.S.

3   at 780 ("[F]ederal habeas corpus relief does not lie for errors of state law[.]") (citations

4   omitted). Thus, the Court will not consider Petitioner's state-law claim.

5           Respondents assert that Petitioner's federal due process claim is  procedurally

6   defaulted and barred from habeas corpus review. On direct appeal, Petitioner challenged the

7   trial court's failure to give a *Willits* instruction on the basis of State law. (Respondents' Exh.

8   M, doc. 16-1 at 75)  The appellate court resolved the claim solely on the basis of State law.

9   (Respondents' Exh. N, doc. 16-2)  Petitioner's passing reference to "his federal rights," was

10  insufficient to fairly present a federal claim to the State courts. General appeals to broad

11  constitutional principles, such as due process, equal protection, and the right to a fair trial,

12  are insufficient to establish a fair presentation of a federal constitutional claim. *Lyons*, 232

13  F.3d at 669, *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway*, 223 F.3d at

14  987 (insufficient for prisoner to have made "a general appeal to a constitutional guarantee,"

15  such as a naked reference to "due process," or to a "constitutional error" or a "fair trial").

16  Likewise, a mere reference to the "Constitution of the United States" does not preserve a

17  federal claim. *Gray*, 518 U.S. at 162-63. Because Petitioner did not fairly present his federal

18  due process claim asserted in Ground Three to the State courts, that claim is technically

19  exhausted and procedurally defaulted because he cannot now return to state court to present

20  that claim. Ariz.R.Crim.P. 32.2, 32.4(a), 32.9(c) and 31.19(a). Because the federal due

21  process claim in Ground Three is procedurally defaulted, federal habeas corpus review is

22  only available if Petitioner establishes cause and prejudice or a fundamental miscarriage of

23  justice, which the Court addresses in Section III.D below.

24  **3. Ground Four - Response to Jury Questions**

25          In Ground Four, Petitioner argues that "the [trial] court erred when it responded to

26  two jury questions which denied Petitioner a fair trial under the Due Process Clause of the

27  U.S. and Arizona Constitutions." (Doc. 1 at 9)  To extent Petitioner raises a state-law claim,

28

1    the Arizona Constitution affords Petitioner no relief in this federal habeas corpus proceed-

2    ing. *Lewis*, 497 U.S. at 780 ("[F]ederal habeas corpus relief does not lie for errors of state

3    law[.]") (citations omitted). Accordingly, the Court will not consider Petitioner's state-law

4    claim.

5              Respondents assert that Petitioner's federal due process claim asserted in Ground

6    Four is procedurally defaulted and barred from habeas corpus review. On direct appeal, Peti-

7    tioner argued that the trial court erred by essentially giving expert testimony in response to

8    two jury questions. (Respondents' Exh. M, doc. 16-1 at 78)  Petitioner based his claim on

9    State law. (Respondents' Exh. M, doc. 16-1 at 75)  The Arizona appellate court resolved the

10   claim solely on the basis of State law. (Respondents' Exh. N, doc. 16-2)  Petitioner's passing

11   reference to "his federal rights," doc. 16-1 at 79, was not sufficient to fairly present a federal

12   claim to the State courts. General appeals to broad constitutional principles, such as due

13   process, equal protection, and the right to a fair trial, are insufficient to establish a fair pre-

14   sentation of a federal constitutional claim. *Lyons*, 232 F.3d at 669 (9th Cir. 2000), *amended

15   on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway*, 223 F.3d at 987 (insufficient for

16   prisoner to have made "a general appeal to a constitutional guarantee," such as a naked

17   reference to "due process," or to a "constitutional error" or a "fair trial"). Likewise, a mere

18   reference to the "Constitution of the United States" does not preserve a federal claim. *Gray*,

19   518 U.S. at 162-63. Because Petitioner did not fairly present his federal due process claim

20   asserted in Ground Four to the State courts, that claim is technically exhausted and

21   procedurally defaulted because he cannot now return to State court to present that claim. *See*

22   Ariz.R.Crim.P. 32.2, 32.4(a), 32.9(c) and 31.19(a). Because Petitioner's federal claim

23   asserted in Ground Four is procedurally defaulted, federal habeas corpus review is only

24   available if Petitioner establishes cause and prejudice or a fundamental miscarriage of

25   justice, which the Court addresses in Section III.D below.

26   **4. Ground Five - Prosecutorial Misconduct**

27              In Ground Five, Petitioner argues that the prosecutor engaged in misconduct

28                                                                      - 19 -

1  "which denied [his] right to a fair trial in violation of the right to Due Process under the

2  [Fourteenth] Amendment." (Doc. 1 at 10)  Respondents assert that Petitioner's federal claim

3  asserted in Ground Five is procedurally defaulted and barred from habeas corpus review.

4          Petitioner raised a claim of prosecutorial misconduct on direct appeal on the basis

5  of State law. (Respondents' Exh. M, doc. 16-1 at 80)  The Arizona appellate court also

6  resolved the claim solely on the basis of State law. (Respondents' Exh. N, doc. 16-2)  Peti-

7  tioner's passing reference to his "due process" and "federal rights," doc. 16-1 at 81, was not

8  sufficient to fairly present a federal claim to the State courts. As mentioned above, general

9  appeals to broad constitutional principles, such as due process, equal protection, and the

10 right to a fair trial, are insufficient to establish fair presentation of a federal constitutional

11 claim. *Lyons*, 232 F.3d at 669, *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001);

12 *Shumway*, 223 F.3d at 987 (insufficient for prisoner to have made "a general appeal to a

13 constitutional guarantee," such as a naked reference to "due process," or to a "constitutional

14 error" or a "fair trial"). Likewise, a mere reference to the "Constitution of the United States"

15 does not preserve a federal claim. *Gray*, 518 U.S. at 162-63. Because Petitioner did not

16 fairly present his federal claim asserted in Ground Five to the State courts, that claim is

17 technically exhausted and procedurally defaulted because he cannot now return to State

18 court to present that claim. *See* Ariz.R.Crim.P. 32.2, 32.4(a), 32.9(c) and 31.19(a). Because

19 Petitioner's federal claim asserted in Ground Five is procedurally defaulted, federal habeas

20 corpus review is only available if Petitioner establishes cause and prejudice or a fundamental

21 miscarriage of justice, which the Court addresses in Section III.D below.

22 **5. Ground Six - Jury Instruction**

23          In Ground Six, Petitioner argues that the trial court gave an erroneous instruction

24 regarding endangerment which denied Petitioner a fair trial under the Due Process Clause of

25 the U.S. and Arizona Constitutions. (Doc. 1 at 11)  To the extent Petitioner raises a state-law

26 claim, the Arizona Constitution affords Petitioner no relief in this federal habeas corpus

27 proceeding. *Lewis*, 497 U.S. at 780 ("[F]ederal habeas corpus relief does not lie for errors of

28

state law[.]") (citations omitted). Thus, the Court will not consider Petitioner's state-law claim.

Respondents assert that Petitioner's federal due process claim is procedurally defaulted and barred from habeas corpus review. On post-conviction review, Petitioner argued that the trial court incorrectly instructed the jury regarding the offense of endangerment. (Respondents' Exh. Q, doc. 16-2 at 31)  Petitioner based his claim of instructional error on state law.  (Respondents' Exh. Q, doc. 16-2 at 31-34) Although Petitioner argued that his conviction and sentence for endangerment violates "the Sixth and Fourteenth Amendments to the Constitution of the United States," and cited a single federal case, he did not provide further analysis of those issues. (*Id.*)  The State court resolved the jury-instruction claim on the basis of State law. (Respondents' Exh. T, doc. 16-2)  Petitioner did not fairly present a federal claim to the state courts. Again, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. *Lyons*, 232 F.3d at 669, *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway*, 223 F.3d at 987 (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial").  Likewise, a mere reference to the "Constitution of the United States" does not preserve a federal claim. *Gray*, 518 U.S. at 162-63.  Because Petitioner did not fairly present his federal due process claim asserted in Ground Six to the State courts, that claim is technically exhausted and procedurally defaulted because he cannot now return to State court to present that claim. *See* Ariz.R.Crim.P. 32.2, 32.4(a), 32.9(c) and 31.19(a). Because Petitioner's federal claim asserted in Ground Six is procedurally defaulted, federal habeas corpus review is only available if Petitioner establishes cause and prejudice or a fundamental miscarriage of justice, which the Court addresses in Section III.D below.

**6. Ground Seven**

In Ground Seven, Petitioner argues that "the trial court's erroneous endangerment

1   instruction undermined the reliability of the burglary verdicts by creating a substantial

2   probability of a non-unanimous verdict" in violation of the Due Process Clause of the U.S.

3   and Arizona Constitutions. To the extent Petitioner raises a state-law claim, the Arizona

4   Constitution affords Petitioner no relief in this federal habeas corpus proceeding. *Lewis*, 497

5   U.S. at 780 ("[F]ederal habeas corpus relief does not lie for errors of state law[.]") (citations

6   omitted). Thus, the Court will not consider Petitioner's state-law claim.

7          Respondents assert that Petitioner's federal due process claim is procedurally

8   barred. On post-conviction relief, Petitioner asserted that "the trial court's erroneous

9   endangerment instruction undermined the reliability of the burglary verdicts by creating a

10   substantial probability of a non-unanimous verdict." (Respondents' Exh. Q, doc. 16-2 at 35)

11   Although the petition for post-conviction relief included a citation to an Arizona case which

12   cited a United States Supreme Court case, doc. 16-2 at 35, Petitioner's discussion was based

13   solely on State law. (Doc. 16-2 at 35-36)  The appellate court resolved the claim solely on

14   the basis of state law. (Respondents' Exh. T, doc. 16-2)  Again, general appeals to broad

15   constitutional principles, such as due process, equal protection, and the right to a fair trial,

16   are insufficient to establish fair presentation of a federal constitutional claim. *Lyons*, 232

17   F.3d at  669, *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway*, 223 F.3d

18   at 987 (insufficient for prisoner to have made "a general appeal to a constitutional guar-

19   antee," such as a naked reference to "due process," or to a "constitutional error" or a "fair

20   trial"). Likewise, a mere reference to the "Constitution of the United States" does not

21   preserve a federal claim. *Gray*, 518 U.S. at 162-63. Because Petitioner did not fairly present

22   his federal claim asserted in Ground Seven to the State courts, that claim is technically

23   exhausted and procedurally defaulted because he cannot now return to state court to present

24   that claim. *See* Ariz.R.Crim.P. 32.2, 32.4(a), 32.9(c) and 31.19(a). Because Petitioner's

25   federal claim asserted in Ground Seven is procedurally defaulted, federal habeas corpus

26   review is only available if Petitioner establishes cause and prejudice or a fundamental

27   miscarriage of justice, which the Court addresses in Section III.D below.

28                                                      - 22 -

**D.  Overcoming the Procedural Bar**

As set forth above, Petitioner's federal claims asserted in Grounds two, three, four, five, six, and seven are procedurally defaulted and barred from review unless Petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50; *Teague*, 489 U.S. at 297-98 (1989).

**1.  Cause and Prejudice**

To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Murray*, 477 U.S. at 488-492. The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. *Id.*  "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby*, 741 F.2d at 244. When a petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith*, 477 U.S. at 533.

Petitioner does not assert any basis sufficient to overcome the procedural bar. (Doc. 29)  Petitioner's status as an inmate and lack of legal knowledge do not constitute cause for his failure to fairly present his federal claims to the Arizona courts. *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (finding that an illiterate *pro se* petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (finding that petitioner's arguments concerning his mental health and reliance upon jailhouse lawyers did not constitute cause.) Petitioner has not shown cause or prejudice to excuse the procedural default.

**2.  Fundamental Miscarriage of Justice**

Additionally, Petitioner has not shown that the failure to consider his defaulted claims will result in a fundamental miscarriage of justice. A federal court may review the

1    merits of a procedurally defaulted habeas claim if the petitioner demonstrates that failure to

2    consider the merits of his claim will result in a "fundamental miscarriage of justice." *Schlup*,

3    513 U.S. at 327. A fundamental miscarriage of justice occurs when a constitutional violation

4    has probably resulted in the conviction of one who is actually innocent. *Id.*

5         This gateway "actual innocence" claim differs from a substantive actual innocence

6    claim. *Smith*, 466 F.3d at 811-12.  The Supreme Court described the gateway showing in

7    *Schlup*, 513 U.S. at 315-16, as a less stringent standard than a substantive claim of actual

8    innocence. *See Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (suggesting that a

9    "habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating

10   doubt about his guilt and must affirmatively prove that he is innocent."). If a petitioner

11   passes through the *Schlup* gateway, the court is only permitted to review his underlying

12   constitutional claims. *Smith*, 466 F.3d at 807.  The fundamental-miscarriage-of-justice

13   exception applies only to a "narrow class of cases" in which a petitioner makes the extra-

14   ordinary showing that an innocent person was probably convicted due to a constitutional

15   violation. *Schlup*, 513 U.S. at 231. To demonstrate a fundamental miscarriage of justice,

16   Petitioner must show that "a constitutional violation has resulted in the conviction of one

17   who is actually innocent." *Id*. at 327.  To establish the requisite probability, Petitioner must

18   prove with new reliable evidence that "it is more likely than not that no reasonable juror

19   would have found petitioner guilty beyond a reasonable doubt." *Id*. New evidence presented

20   in support of a fundamental miscarriage of justice may include "exculpatory scientific

21   evidence, trustworthy eyewitness accounts, or critical physical evidence that was not

22   presented at trial." *Id*. at 324; *see also, House v. Bell*, 547 U.S. 518 (2006) (stating that a

23   fundamental-miscarriage-of-justice contention must involve evidence that the trial jury did

24   not have before it).

25        Petitioner has not established that, in light of newly discovered evidence, "it is

26   more likely than not that no reasonable juror would have found petitioner guilty beyond a

27   reasonable doubt." *Schlup*, 513 U.S. at 324, 327. Because Petitioner has not established any

28

1  basis to excuse his procedural default, Petitioner's federal claims asserted in Grounds Two

2  through Seven are barred from federal habeas corpus review.

3        The Court will next consider the merits of Grounds One and Eight, which Peti-

4  tioner properly exhausted in State court.

5  **IV. Merits Analysis**

6    **A.  Standard of Review**

7        This Court's review of Petitioner's claims is constrained by the applicable standard

8  of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the AEDPA. The ADEPA

9  "modified a federal habeas court's role in reviewing state prisoner applications in order to

10  prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to

11  the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The standard in §

12  2254(d) is "meant to be" "difficult to meet." *Harrington v. Richter*, 562 U.S., ___ , 131 S.Ct.

13  770, 786 (2011). Section "2254 stops short of imposing a complete bar on federal court re-

14  litigation of claims already rejected in state court proceedings." *Id*. (citations omitted). "Sec-

15  tion 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunction in

16  the state criminal justice systems,' not a substitute for ordinary error correction through

17  appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

18        If an habeas corpus petition includes a claim that has been "adjudicated on the

19  merits in State court proceedings," federal habeas relief is not available unless it is shown

20  that the state court's decision "was contrary to" federal law then clearly established in the

21  holdings of the United States Supreme Court, § 2254(d)(1); *Green v. Fisher*, __ U.S.__, 132

22  S.Ct. 38, 43 (2011); or that it "involved an unreasonable application of" such law, §

23  2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of

24  the record before the state court, § 2254(d)(2). *Richter*, 562 U.S.___, 131 S.Ct. at 785; *see*

25  *also Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006). This is a "difficult to meet,"

26  *Richter*, 562 U.S. ___, 131 S.Ct. at 786, and "highly deferential standard for evaluating

27  state-court rulings, which demands that state-court decisions be given the benefit of the

28

doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (citation and internal quotation omitted). The petitioner bears the burden of proof. *Id*. at 25.

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Richter*, 131 S.Ct. at 786 (citing *Renico v. Lett*, 559 U.S. ___ , ___, 130 S.Ct. 1855, 1866 (2010)). The Ninth Circuit has acknowledged that it cannot reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Even if the state court neither explains its ruling nor cites United States Supreme Court authority, the reviewing federal court must nevertheless examine Supreme Court precedent to determine whether the state court reasonably applied federal law. *Richter*, 131 S.Ct. at 784 (citing *Early v. Packer*, 537 U.S. 3, 8 (2003)). Compliance with the habeas statute "does not even require awareness of [U.S. Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *Richter*, 131 S.Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state to deny relief.  This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim', not a component of one, has been adjudicated." *Richter*, 131 S.Ct. at 784.

Under § 2254(d), a state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams*, 529 U.S. at 411. A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Id. at*

1    405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect application of federal law

2    does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating

3    that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively

4    unreasonable."). "A state court's determination that a claim lacks merit precludes federal

5    habeas relief so long as 'fairminded jurists could disagree on the correctness of the state

6    court's decision.'" *Richter*, 131 S.Ct. at 786 (citing *Yarborough*, 541 U.S. at 664). "'[E]val-

7    uating whether a rule application was unreasonable requires considering the rule's speci-

8    ficity. The more general the rule, the more leeway courts have in reaching outcomes in case-

9    by-case determination.'" *Id.*  The Court will consider Petitioner's claims in view of the fore-

10   going standard.

11   **B. Ground One - Speedy Trial Violation**

12           In Ground One, Petitioner argues that his Sixth Amendment right to a speedy trial

13   was violated when his trial began on July 19, 2005, one day past the deadline provided by

14   Arizona's speedy trial rule. (Doc. 1 at 6)  Petitioner presented this claim on direct appeal.

15   (Respondents' Exh M, doc. 16-1)  Petitioner argued that his date of arrest was July 8, 2004,

16   and he never waived or agreed to waive time. (Respondents' Exh. M, doc. 16-1 at 71)  On

17   January 6, 2005, over Petitioner's objection, the Honorable Ronald S. Reinstein granted the

18   State's motion for a continuance because an alleged victim was arrested in another country,

19   excluded time for extraordinary circumstances, and set the last day of trial to January 30,

20   2005. (*Id.*) Thereafter, on the State's motion, Judge Reinstein recused. (Docs. 16-1 at 86; 16-

21   2 at 2)  The State filed a motion to clarify and requested a hearing before the Honorable

22   Edward Ballinger. (*Id.*; doc. 16-1 at 86)  On January 18, 2005, Judge Reinstein issued a

23   *nunc pro tunc* entry, correcting the January 6, 2005 minute entry to reflect that no time was

24   excluded and that the "last day remains January 18, 2005." (Docs. 1 at 6; 16-1 at 71, 88)

25   That same day, Judge Ballinger addressed the State's motion to clarify, found extraordinary

26   circumstances existed to exclude one day, assigned the case to Judge McClennen, and set the

27   trial date and last day to January 19, 2005. (Doc. 16-2 at 7)

28                                                  - 27 -

1    The Arizona Court of Appeals rejected Petitioner's speedy-trial claim, finding that

2    Judge Ballinger did not abuse his discretion in finding extraordinary circumstances and

3    continuing the case for one day in view of "Judge Reinstein's last-minute decision to modify

4    the last day, the confusion in the record, and the fact that the case had not been assigned to a

5    trial judge." (Doc. 16-2 at 7)  The Arizona appellate court noted that because Arizona's

6    speedy trial rules, specifically Ariz.R.Crim.P. 8.4, 8.5, are more restrictive than the Sixth

7    Amendment, it did not need to independently consider Petitioner's Sixth Amendment claim.

8    (*Id.*)  Petitioner has not shown that the State court's resolution of his speedy-trial claim was

9    contrary to, or was based on an unreasonable application of clearly established federal law;

10   nor was it an unreasonable determination of the facts in light of the evidence presented. 28

11   U.S.C. § 2254(d). The Sixth Amendment guarantees that, "'[i]n all criminal prosecutions,

12   the accused shall enjoy the right to a speedy . . . trial . . . .'" *Doggett v. United States*, 505

13   U.S. 647, 651 (1992) (quoting U.S.C.A. Sixth Amendment). The Supreme Court has "quali-

14   fied the literal sweep of the provision by specifically recognizing the relevance of four

15   separate enquiries: whether delay before trial was uncommonly long, whether the govern-

16   ment or the criminal defendant is more to blame for that delay, whether, in due course, the

17   defendant asserted his right to a speedy trial, and whether he suffered prejudice as the

18   delay's result." *Id.,* 505 U.S. at 651 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

19   Applying the balancing analysis set forth by the Supreme Court in *Barker v. Wingo*, 407

20   U.S. 514, 530 (1972), neither the length of the delay - one day - nor the reasons for it weigh

21   heavily in Petitioner's favor. Moreover, there is no evidence that Petitioner's defense was

22   hampered by the one-day delay, or that he suffered any other form of prejudice that rises to

23   the level of a Sixth Amendment violation. *Doggett*, 505 U.S. at 651.

24        To the extent Petitioner raises a state-law claim in his Petition, Rule 8 of the Ari-

25   zona Rules of Criminal Procedure affords him no relief in this federal habeas corpus pro-

26   ceeding. *Lewis*, 497 U.S. at 780 ("[F]ederal habeas corpus relief does not lie for errors of

27   state law[.]") (citations omitted). Moreover, the federal Speedy Trial Act is inapplicable,

28

- 28 -

because Petitioner was not charged with violating federal law. *See United States v. Benitez*, 34 F.3d 1489, 1493 (9th Cir. 1994). Accordingly, Petitioner is not entitled to relief on Ground One.

## C.  Ground Eight - Ineffective Assistance of Counsel

In Ground Eight, Petitioner argues that trial counsel was ineffective for failing to:

1. Request a proper [endangerment] instruction from the court.

2. Request the court to separate the predicate felonies that supported the burglary charge or submit interrogatories to the jury to ensure the burglary conviction was unanimous, even [if] the endangerment instruction been a correct statement of the law;

3. Present any evidence in mitigation as to Petitioner's mental health [because] there was ample evidence in the presentence investigation report, he was undergoing a psychiatric evaluation and on antipsychotic medication and had been diagnosed with bipolar disorder.  Along with this there were records from other agencies showing [medications] for schizophrenia.

(Doc. 1 at 13)  Petitioner also argues that appellate counsel was ineffective for filing a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).[4] (*Id.*)

---

[4]  In his Reply, Petitioner expands on his claim of ineffective assistance of counsel, arguing that his post-conviction counsel was ineffective. (Doc. 29)  Petitioner's assertion of such a claim for the first time in his Reply is improper. Even after *Martinez v. Ryan*, Petitioner was not entitled to effective assistance of counsel on post-conviction proceedings. 132 S.Ct. 1309. *Martinez* simply holds that, where, under state law, ineffective-assistance-of-trial-counsel claims must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing those claims if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective. *Id.* at 1316-18. *Martinez* does not apply here because there is no procedural bar to Petitioner's claims of ineffective assistance of counsel. *See Bragna v. Ryan*, 2012 WL 1868517, * 2 (D.Ariz. May 22, 2012) ("[H]ere, however, petitioner has failed to present his ineffective assistance of trial counsel claim to the state court at all. The narrow *Martinez* exception to *Coleman v. Thompson*, [citation omitted], would have applied here had petitioner presented the ineffective assistance of trial counsel claim to the state court in his second petition and had it denied for failure to raise it in his first petition. But not having presented it to the state court at all, he has failed to exhaust and the claim is procedurally defaulted. *Martinez* does not save the claim because it applies only to ineffective assistance of counsel at the first state petition for post-conviction relief, not petitions 2, 3, and 4. Petitioner's failure to raise the claim in his successive state petitions does not qualify as cause to excuse procedural default under *Coleman*.").

On post-conviction review, Petitioner presented essentially the same claims, arguing that trial counsel was ineffective for failing to move for an acquittal under Rule 20, Ariz.R.Crim.P., failing to challenge the endangerment charge, failing to object to the endangerment instruction, failing to request that the court separate the predicate felonies that supported the burglary charge or submit interrogatories to the jury, and failing to raise Petitioner's mental health as a mitigating factor at sentencing. (Respondents' Exh. Q, doc. 16-2 at 36-40)  He also argued that appellate counsel was ineffective for filing an *Anders* brief rather. (*Id*. at 41)

The State filed a response, addressing each of Petitioner's grounds of ineffective assistance of trial and appellate counsel, Respondents' Exh. R, doc. 16-2 at 56-59, to which Petitioner replied. (Respondents' Exh. S, doc. 16-2 at 62)  The post-conviction court rejected Petitioner's claims of ineffective assistance of counsel, adopting the State's reasoning. (Respondents' Exh. T, Doc. 16-2 at 76)

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner. *Id.* at 687. To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Id*., at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998). Acts or omissions that "might

1 │ be considered sound trial strategy" do not constitute ineffective assistance of counsel.

2 │ *Strickland*, 466 U.S. at 689.

3 │       To establish a Sixth Amendment violation, a petitioner must also establish that he

4 │ suffered prejudice as a result of counsel's deficient performance. *Id.* at 691-92. To show

5 │ prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's

6 │ unprofessional errors, the result of the proceeding would have been different. A reasonable

7 │ probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694;

8 │ *Hart v. Gomez*, 174 F.3d 1067, 1069 (9th Cir. 1999); *Ortiz v. Stewart*, 149 F.3d 923, 934

9 │ (9th Cir. 1998). The prejudice component "focuses on the question whether counsel's de-

10 │ ficient performance renders the result of the trial unreliable or the proceeding fundamentally

11 │ unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The court may proceed directly to

12 │ the prejudice prong. *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing

13 │ *Strickland*, 466 U.S. at 697). The court, however, may not assume prejudice solely from

14 │ counsel's allegedly deficient performance. *Id.*, at 1155.

15 │       "'Surmounting *Strickland's* high bar is never . . . easy.'" *Richter*, 131 S.Ct. at

16 │ 786 (quoting *Padilla v. Kentucky*, __ U.S.___, 130 S.Ct. 1473, 1485 (2010)). Establishing

17 │ that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more

18 │ difficult, because both standards are "highly deferential," and because *Strickland's* general

19 │ standard has a substantial range of reasonable applications. *Id.*, at 788 (citations omitted).

20 │ The issue under § 2254(d) is not whether counsel's actions were reasonable, but "whether

21 │ there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

22 │       Petitioner argues that trial counsel was deficient for failing to raise certain issues

23 │ during the trial or sentencing. Even assuming trial counsel's performance was deficient as

24 │ described by Petitioner, Petitioner is not entitled to relief on his ineffective assistance claims

25 │ because he does not provide any citations to the record or other evidence to satisfy his

26 │ burden of showing that counsel's deficient prejudiced him. *Jackson*, 211 F.3d at 1155 n. 3

27 │ (citing *Strickland*, 466 U.S. at 697) (stating that, "[i]f it is easier to dispose of an ineffec-

28 │

1   tiveness claim on the ground of lack of sufficient prejudice, which we expect will often be

2   so, that course should be followed."). In other words, Petitioner has not shown that, but for

3   trial counsel's deficient performance, there is a reasonable likelihood that the outcome of his

4   trial would have been different. *Strickland*, 466 U.S. at 694. Moreover, Petitioner has not

5   shown that the State court's rejection of his claims of ineffective assistance of trial counsel

6   was contrary to, or was based on an unreasonable application of, *Strickland*. 28 U.S.C. §

7   2254(d).

8        Likewise, Petitioner's claim of ineffective assistance of appellate counsel fails.

9   Claims of ineffective assistance of appellate counsel are reviewed according to *Strickland's*

10  two-pronged test. *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir.1989); *United States v.*

11  *Birtle*, 792 F.2d 846, 847 (9th Cir.1986). Petitioner must show that appellate counsel's per-

12  formance was objectively unreasonable in failing to identify and bring the claims and that

13  there was a reasonable probability that, but for counsel's unreasonable failure, he would

14  have prevailed on his appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Here, Petitioner's

15  claim is conclusory, merely asserting that appellate counsel was ineffective for failing to

16  review the record and filing an *Anders* brief. (Doc. 1 at 13) Petitioner makes no effort to

17  describe how appellate counsel's allegedly deficient performance prejudiced him. In other

18  words, Petitioner has not shown that, but for appellate counsel's alleged ineffective assis-

19  tance, there is a reasonable probability he would have prevailed on appeal. *Smith*, 528 U.S.

20  at 285. Moreover, Petitioner has not shown that the State court's rejection of his claim of

21  ineffective assistance of appellate counsel was contrary to, or was based on an unreasonable

22  application of, *Strickland*. 28 U.S.C. § 2254(d).

23  **V.  Conclusion**

24       In summary, Petitioner's Petition is untimely and should be denied on that basis.

25  Alternatively, Petitioner's claims are procedurally barred, are not cognizable on federal

26  habeas corpus review, or simply lack merit.

27       Accordingly,

28

**IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus, doc. 1, be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable and Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the undersigned Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the undersigned Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. Rule 72, Federal Rules of Civil Procedure.

Dated this 2nd day of July, 2012.

Lawrence O. Anderson
United States Magistrate Judge